United States District Court
Southern District of Texas
**ENTERED**
March 09, 2018
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **RAUL ROBERT GUTIERREZ, Plaintiff,** | § | |
| **v.** | § | **NO. 5:14-cv-49** |
| **ALFRED SANTIAGO and GREG ABBOTT, Defendants.** | § | |

**MEMORANDUM AND ORDER**

**Pending before the Court is Defendant Greg Abbott's Motion to Dismiss (Dkt. 8). Plaintiff has responded to the motion (Dkt. 9) and Defendant has filed a reply (Dkt. 10).**

**BACKGROUND**

**Plaintiff Raul Gutierrez is a citizen and resident of Mexico. Defendant Alfred Santiago is a sergeant in the Law Enforcement Division of the Texas Office of the Attorney General. At the relevant times, Defendant Greg Abbott was the Attorney General of Texas, and the official charged with the management of the Law Enforcement Division of the Texas Office of the Attorney General.**

**Plaintiff alleges that on February 7, 2014 he was legally transporting $20,100 and 2,500 pesos from Mexico to the United States.[1] Plaintiff alleges that the money represented proceeds from a jewelry store in Mexico, and that he was paid to transport**

**[1] All factual allegations are derived from Plaintiff's May 9, 2014 Amended Complaint (Dkt. 7).**

**and deposit the money into a bank account in the United States. Plaintiff cleared customs inspection at the border, but was later detained by Defendant Santiago. Defendant Santiago alleged that Plaintiff was illegally transporting money without a license in violation of state law. Defendant Santiago seized the money and Plaintiff was taken into custody. Plaintiff was arraigned at the Webb County Law Enforcement Center, but was later released by Immigration and Customs Enforcement, who stated "that they could not determine that he had violated any law." (Dkt. 7 at ¶¶12-13). However, the seized moneys were not returned to Plaintiff, and on March 7, 2014 the State of Texas brought forfeiture proceedings against the seized money in the 49th District Court of Texas.**

**On March 16, 2014, Plaintiff brought this action in Texas state court, which Defendant Abbott removed to federal court on April 17, 2014. Plaintiff's first cause of action is pursuant to 42 U.S.C. 1983, and alleges that his detention by Defendant Santiago violated his constitutional rights. Specifically, Plaintiff alleges malicious prosecution, illegal seizure of his money, false arrest, and false imprisonment. (Dkt. 7 at ¶¶22-27). Plaintiff alleges that Defendant Abbott's policies and training procedures with respect to the enforcement of state money transporting laws caused the constitutional deprivation. (Dkt. 7 at ¶26). Plaintiff seeks both money damages and various forms of injunctive relief. Plaintiff further seeks a declaratory judgment**

**that he is not covered by the definitions set forth in Texas Finance Code § 151.302(b)(1) and (2).**

**On May 23, 2014, Defendant Abbott filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(c). Defendant Abbott claims 1) that he is entitled to qualified immunity, 2) that Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983, 3) that injunctive relief for Plaintiff's 42 U.S.C. § 1983 claim is barred by sovereign immunity, and 4) that Plaintiff has failed to state a claim under the Texas Declaratory Judgments Act.**

**On July 31, 2014, this Court stayed the federal action pending resolution of the state forfeiture claim in order to avoid the possibility of conflicting orders in this and the state forfeiture actions. The State has now filed a motion for nonsuit, and the state forfeiture case has been dismissed with prejudice. (See 2014-CVK-441D1). Accordingly, the Court now turns to Defendant's motion to dismiss.[2]**

**Analysis**

**In deciding a Rule 12(b)(6) motion to dismiss, the Court limits itself to the contents of the pleadings, accepting as true all well-plead facts and viewing them in the light most favorable**

[2] Defendant Abbott spends much of the thirty-six pages of his opening brief suggesting, but not moving for, Rule 11 sanctions against the Plaintiff. The Court declines to consider sanctions in this case.

to the plaintiffs.[3] Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 634–35 (5th Cir. 2014). However, this tenet is inapplicable to legal conclusions. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.

I. Section 1983 Claim

42 U.S.C. § 1983 creates a private cause of action allowing recovery from government officials who, acting under color of law, deprive a United States citizen of "any rights, privileges, or immunities secured by the Constitution." Section 1983 claims may be brought against an official in either their individual or official capacity. See Goodman v. Harris Cty., 571 F.3d 388, 395 (5th Cir. 2009). Plaintiff brings claims against Defendant Abbott in both his individual and official capacity.

a. Individual Capacity

Plaintiff claims that Defendant Abbott, in his individual capacity, implemented policies or failed to implement policies or training causing the complained of constitutional harms. Defendant Abbott claims qualified immunity, which "shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established

[3] A motion to dismiss based on qualified immunity is generally evaluated under Rule 12(b)(6). Prison Legal News v. Livingston, 2010 WL 1610109, at *2 (S.D. Tex. 2010) (citing Collins v. Ainsworth, 382 F.3d 529, 536 (5th Cir.2004)). "A plaintiff seeking to overcome" a defense of immunity to suit "must plead specific facts that ... allow the court to draw the reasonable inference that...defeat[s]" the defense. Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012).

statutory or constitutional law of which a reasonable person would have known." Goodman, 571 F.3d at 395. Before determining whether Defendant Abbott is entitled to immunity, the Court must first determine whether the Plaintiff has successfully pleaded a claim under Section 1983. See id. (holding that "qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity").

As a general rule, in a Section 1983 suit a supervisor may not be held accountable for the actions caused by a subordinate under a theory of vicarious liability or respondent superior. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303–04 (5th Cir. 1987). However, "a supervisory official may be held liable . . . if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). Plaintiff does not allege that Defendant Abbott had personal affirmative involvement in the injury. Rather, he alleges 1) that Defendant Abbott implemented certain official policies, resulting in constitutional injury or, alternatively, 2) that Defendant Abbott failed to implement policies or failed to train his employees, resulting in constitutional injury. (Dkt. 7 at ¶¶26-27).

**i. Official Policy**

**"Supervisory liability may . . . exist without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Cozzo v. Tangipahoa Par. Council--President Gov't, 279 F.3d 273, 289 (5th Cir. 2002). Plaintiff has cited a number of policies allegedly implemented by Defendant Abbott as being causes of constitutional injury.**

**Plaintiff alleges that Defendant Abbott stationed employees at the International Bridge in Laredo, Texas to "illegally accost law abiding Mexican nationals." (Dkt. 7 at ¶18). Plaintiff cites no evidence of additional incidents where a Mexican national was falsely prosecuted at the border. Plaintiff further fails to allege any directive or statement by Defendant Abbott that his officers were to "accost" Mexican nationals. Accordingly, Plaintiff fails to establish that there is an official policy of accosting Mexican nationals. See Thompkins, 828 F.2d at 305 (concluding "that [Defendant] cannot be held liable on the theory that he implemented an unconstitutional policy when the record below indicates no more than that the system may have failed in the one particular instance"); Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992)(holding that establishing an official policy requires a "policy statement, ordinance, regulation, or decision that is**

**officially adopted”). Plaintiff’s statement that officers were posted to “illegally accost law abiding Mexican nationals” is a conclusory statement not entitled to an assumption of truth. See Iqbal, 129 S.Ct. at 1949. What is left of these allegations, then, is that Defendant Abbott stationed law enforcement officers at the border between Texas and Mexico. The law at question in this case specifically involves the transportation of money from Mexico into the United States. The Court cannot conceive that a state placing a law enforcement officer at the point where a law must be enforced is a “repudiation of constitutional rights.” Cozzo, 279 F.3d at 289.**

**Plaintiff next alleges that Defendant Abbott implemented “policies and procedures that cause his employees . . . to file completely unwarranted and false criminal charges.” (Dkt. 7 at ¶19). Again, Plaintiff has not named with any specificity a “policy statement, ordinance, regulation, or decision that is officially adopted” by Defendant Abbott which leads to such unlawful prosecutions. Johnson, 958 F.2d at 94. Further, Plaintiff has established no “persistent, widespread practice” that would indicate a policy of “unwarranted or false criminal charges.” Id. Once again, this allegation is a bare statement of legal conclusions, and does not make out a plausible Section 1983 claim.**

**Finally, Plaintiff alleges that Defendant Abbott enacted a series of policies designed to increase the cost of litigation.**

(Dkt. 7 at ¶21). Specifically, Plaintiff alleges that Defendant Abbott enacted a policy by which employees were to refuse to waive service in Section 1983 claims. Once again, Plaintiff fails to point to an official promulgation of the policy, or to more than one example of a refusal to waive service, and so has failed to properly allege an official policy. Johnson, 958 F.2d at 94. Further, to support supervisory liability, the policy cited must be causally linked to the complained of constitutional injury. See Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984). Even if Plaintiff is correct in this allegation, the increased cost of litigation is causally unrelated to his claim of malicious prosecution and unlawful arrest.

Plaintiff has failed make out a proper Section 1983 claim on the basis of official policies enacted by Defendant Abbott.

ii. Failure to Train and Failure to Implement Policies

A supervisor may also be liable where he 1) failed to train the subordinate official or implement certain policies; 2) a causal link exists between the failure to train or the unimplemented policies and the violation of the plaintiff's rights; and 3) the failure to train or failure to implement policies amounts to deliberate indifference. See, e.g, Goodman, 571 F.3d at 395.

Plaintiff makes several accusations that Defendant Abbott failed to train his employees or failed to implement adequate policies. However, Plaintiff cannot show that Defendant Abbott

**acted with deliberate indifference. The Fifth Circuit has laid out the standard for deliberate indifference in some detail:**

> **Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.**

**Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381–82 (5th Cir. 2005) (cleaned up).**

**Plaintiff alleges that Defendant Abbott failed to train officers on the "the laws," including the sections of the Texas Finance Code at issue in this case. As support for Defendant Abbott's failure to train his employees properly on legal matters, Plaintiff cites a completely separate and unrelated case in which Plaintiff alleges that the Office of the Attorney General improperly placed a lien on a bank account for unpaid child support. (Dkt. 7 at ¶16.) To establish deliberate indifference, "the plaintiff must generally demonstrate at least a pattern of similar violations." Thompson v. Upshur Cty., TX, 245 F.3d 447, 459 (5th Cir. 2001)(emphasis added); McCully, 406 F.3d at 383**

**(showing a pattern of violations "require[s] that the prior acts be fairly <u>similar</u> to what ultimately transpired")(emphasis added). Plaintiff has cited only his own arrest, and an unrelated, dissimilar alleged violation regarding child support. Accordingly, Plaintiff has failed to show a pattern of violations that can create an inference of deliberate indifference with respect to training of employees.**

**Plaintiff further alleges that Defendant Abbott failed to enact a policy by which he would review the merits of forfeiture proceedings. Once again, Plaintiff has failed to establish a pattern of harms related to Defendant Abbott not reviewing the merits of prosecutions. <u>See</u> <u>Thompson</u>, 245 F.3d at 459. At most, he alleges that in *this* case, Defendant Abbott's lack of review led to constitutional harm. This is insufficient. Without some sort of pattern of issues, "the inadequacy of the [supervision] is [not] obvious [or] obviously likely to result in a constitutional violation." <u>McCully</u>, 406 F.3d at 383. Accordingly, Plaintiff has not shown that Defendant Abbott acted with deliberate indifference with respect to reviewing the actions of his employees.**

**Plaintiff in each case has failed to establish that Defendant Abbott acted with deliberate indifference. It is not necessary to analyze the other elements of supervisory liability. <u>See</u> <u>Goodman</u>, 571 F.3d at 396. Because, as explained above, Plaintiff has also failed to show that Defendant Abbott enacted unconstitutional**

policies that resulted in constitutional harm, Plaintiff has failed to make out a Section 1983 claim against Defendant Abbott in his individual capacity. Because "qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity," the Court does not reach the remaining elements of Defendant Abbott's claim of qualified immunity. See id.

b. Official Capacity

Plaintiff also alleges several claims against Defendant Abbott in his official capacity as the Attorney General of Texas. Plaintiff seeks an injunction requiring training on the Texas Finance Code and an injunction requiring that the Office of the Attorney General designate an individual with authority to waive service and accept service on behalf of any employee of the Office. (Dkt. 7 at ¶30-31.)

A suit against a state official acting in his official capacity is akin to a suit against the state itself. See,e.g., Hafer v. Melo, 112 S.Ct. 358 (1991). Generally, such suits are barred by sovereign immunity under the Eleventh Amendment, unless the state has waived, or Congress has abrogated, the immunity. See,e.g., Olivier v. Univ. of Texas Sys., 988 F.2d 1209 (5th Cir. 1993). However, where a Plaintiff's claim alleges a continuing violation of the constitution, and where he seeks prospective declaratory or injunctive relief, sovereign immunity does not

apply. See Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998)(citing Ex Parte Young, 28 S.Ct. 441 (1908)).

Plaintiff meets both requirements of the Ex Parte Young exception. First, he alleges an ongoing violation of the federal constitution. Specifically, he alleges that the Texas Attorney General currently has insufficient training on certain laws and that the Texas Attorney General currently has no policy requiring waiver of service, both of which he claims leads to constitutional harm. Second, Plaintiff seeks prospective relief in the form of injunctions regarding training and service of process. Accordingly, Plaintiff’s claims fall within the Ex Parte Young exception and sovereign immunity does not bar his claims against Defendant in his official capacity.

These claims, however, can go no farther. For similar reasons to the claims against Defendant Abbott in his individual capacity, Plaintiff fails to make out a plausible claim under Section 1983. With respect to the claim that Defendant Abbott has failed to train his employees, the Court has already explained that Plaintiff has failed to show a sufficient pattern of violations that would indicate that Defendant Abbott was indifferent to the obvious likelihood of a constitutional violation. For the same reason, Plaintiff has failed to show that the Attorney General, in his official capacity, must have been deliberately indifferent.

**McCully, 406 F.3d at 383. There are therefore no grounds for the Court to enter the requested injunction requiring additional training.**

**Plaintiff has also failed to state a claim with respect to his complaints regarding service of process of employees of the Office. Plaintiff has provided no authority, and the Court has found no authority, for the proposition that a refusal to waive service implicates a constitutional right. It is unclear what constitutional right Plaintiff is seeking to vindicate here. Moreover, even if the nature of the constitutional harm was clear, Plaintiff has once again alleged no pattern of violations that would that would indicate the Office acted with deliberate indifference towards obvious harm caused by these policies. See McCully, 406 F.3d at 383.**

**Accordingly, Plaintiff has failed to state a claim for relief against Defendant Abbott in his official capacity.**

**II. Texas Declaratory Judgment Act**

**Finally, Plaintiff requests a declaratory judgment pursuant to the Texas Declaratory Judgment Act that he "does not fit the definition set forth in Texas Finance Code Section 151.302(b)(1) and (2)." (Dkt. 7 at 33). Defendant Abbott moves to dismiss this claim, arguing that Plaintiff has not established a justiciable controversy.**

**The Texas Declaratory Judgment Act is a procedural mechanism and is inapplicable in federal court. See, e.g., Utica Lloyd's v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998). However, because the action was removed from state court, the action can be construed by the Court as having been brought pursuant to the federal Declaratory Judgment Act ("FDJA"). Miller v. CitiMortgage, Inc., 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013). The FDJA allows a federal court to declare the rights and legal relations of an interested party. 28 U.S.C. §§ 2201–2202. A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. Brillhart v. Excess Insurance Co. of America, 62 S.Ct. 1173, 1176 (1942). "Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." Eccles v. Peoples Bank of Lakewood Vill., Cal., 68 S. Ct. 641, 644 (1948).**

**In order to receive relief, Plaintiff must demonstrate either continuing harm or a real and immediate threat of immediate injury in the future; past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects. Burks v. Price, 2015 WL 3622684, at *11 (E.D. Tex. June 10, 2015) (citing Society of Separationists, Inc. v. Herman, 959 F.2d 1283, 1285 (5th Cir.1992)). Defendant has argued that Plaintiff has shown only one**

**instance of the application of the Texas Finance Code against him and that it is purely speculative that a similar issue will arise in the future.**

**Plaintiff has not in fact been prosecuted under the section at issue. (Dkt. 7 at ¶13). Further, the instant application of the Texas Finance Code to the Plaintiff, which underlies this suit, was resolved when the State moved to non-suit the forfeiture action. While there might be some risk that the statute would be applied against him again, that possibility does not seem "immediate."**

**Moreover, even if the threat of injury appeared more immediate, the Court would be reluctant to exercise its discretion over declaratory judgments in this case. See Herman, 959 F.2d at 1287. This Court is instructed to be cautious when interfering with a state's good faith application of its criminal laws. See Abbott Laboratories v. Gardner, 87 S.Ct. 1507 (1967). Plaintiff has the right and ability to defend himself or his property against enforcement of the Texas Finance Code in state court. In fact, he has successfully defended himself in the instant case. The state forfeiture proceeding has been dismissed, and it is the Court's understanding that the money at issue here will be returned to him. Given that there are adequate remedies in state court and considering that the chance of further harm is not "clear," Herman, 959 F.2d at 1287, Plaintiff has not met the "severe burden"**

**needed to justify a federal court's intervention in this case, Nichols v. Vance, 293 F. Supp. 680, 683 (S.D. Tex. 1968).**

**The claim for declaratory relief is dismissed.**

**Conclusion**

**The Court therefore GRANTS Defendant Abbott's motion to dismiss (Dkt. 8). The claims against Defendant Abbott in his individual capacity and official capacity, and Plaintiff's claim seeking declaratory relief, are hereby DISMISSED.**

**DONE at Laredo, Texas, this 8th day of March, 2018.**

**George P. Kazen**
**Senior United States District Judge**